Curia, per SAVAGE, Ch. J.
Were this the case of an or dinary mortgage, it would be perfectly plain in favor of the plaintiff. Wattles was the owner of the equity of redemption, when the lessor’s judgment was recovered against him. That judgment became a lien upon Wattles’ interest in the premises. The defendant holds under Wattles ; and can have no other or greater estate than Wattles, whose interest was liable to be sold under execution, and was in fact so sold; and the lessor became the purchaser. If the plaintiff would have been entitled to recover against Wattles, he is entitled to recover against the defendant.
It is important, then, to inquire how the mortgage to the loan officers, and the proceedings under it, have affected the rights of the parties. By the 11th section of the act, the interest of the money loaned on mortgage; was to become due on the 1st Tuesday of May yearly. On that day, and the three successive Tuesdays, the commissioners were, by the 16th section, to attend for the purpose of receiving interest. By the 15th section, if the borrower neglect to pay the interest on the first Tuesday of May, or within 22 days thereafter, then the commissioners, their successors and assigns shall be seised of an absolute indefeasible estate in the lands, tenements and hereditaments thereby mortgaged, to the uses in the act mentioned; and the mortgagor, his heirs or assigns, shall be utterly1 foreclosed *and barred of all equity of redemption of the mortgaged premises, any law, usage or custom, or practice in courts of equity to the contrary notwithstanding. The commissioners are further directed, within eight days after default, to advertise the lands to be sold on the third Tuesday of September, at the court-house in the county; at which time and place they are to sell to the highest bidder, who is to hold, discharged of all equity of redemption, and all subsequent incumbrances. But if the mortgagor, his heirs or assigns, shall, at or before the sale, pay the in *52 tetesfc and costs, the commissioners' shall accept the same; and permit the owner, his heirs or assigns, to take possession of the mortgaged premises, and to hold the same until default shall be made in payment of any further sum on the mortgage. In case of a sale, the act directs how much shall be retained by the commissioners; and that the remainder, if any there be, they shall pay the mortgagor, his heirs or assigns. The commissioners are not obliged to take notice of any assignee without actual notice being given, and then the assignees are to be preferred according to the priority of the commissioners, entry of the notice.
Under this act and the act of 1792, there have been some adjudications which it is proper to notice.
In Jackson v. Voorhis, (9 John. 129,) the lessors of the plaintiff were the widow and heir of one Isaac Limerick. The defendant showed that the premises had been mortgaged to the loan officers under- the act of 1792 ; and that the interest being due and unpaid in 1810, the premises were advertised and sold. The court said, that at the commencement of the suit, there was a perfect title in the loan officers; that the 13th section of that act is precisely like the 15th section of the act of 1808 ; that the default amounted, ipso facto, to an absolute foreclosure; and consequently a complete title existed out of the lessors at the commencement of the suit.
In the case of Sherill v. Crosby, (14 John. 360,) the court again say, the sale by the loan officers was absolute and unconditional; and by the default in paying the interest *for 22 days from the first Tuesday in May preceding the sale, the estate of the mortgagor was gone; and the statute vested an absolute indefeasible estate in the loan officers. In Denning v. Smith, (3 John. Ch. Rep. 338,) the chancellor concurs in the correctness of the decisions mentioned ; but holds the commissioners to be trustees for the state as to the amount due the state; and trustees for the mortgagor for the residue.
In these cases, sales were made on the third Tuesday of September ; and the title, therefore, continued, after default, out of the mortgagor, But there are other cases pro *53 v^ec^ for by the statute, which it will be proper to. eon , — '
The 19th section provides, that if the lands are not sola jn September, or are sold and not paid for, then the commissioners shall take possession for the benefit of the state, till the third Tuesday of April, when the lands are to be again offered for sale; and if not sold, then the commissioners shall purchase and hold the same for the people of the state: and if, before such sale, the owner shall pay what is due for interest and costs, the commissioners shall permit him to take possession till another default.
It is evident that the legislature intended to give time of redemption till after the title is completely transferred to the state.
In this case, the money was paid after default, and before the commissioners were authorized to take possession. The defendant, then, was permitted to retain possession. What were his rights ? Was he not remitted to his former estate ? The act does not say so; but, after another default, it would probably be necessary to advertise the lands again, before a salé would be regular; but if so, it may be said, that does not determine that any title had re-vested in him. It must be admitted, however, that upon a release being executed, the title, which had vested in the commissioners by reason of the default, is divested, and they, have no longer any estate in the premises. I ask, where has it gone ? Is it to the present occupant, and does he thereby take the land discharged of all Encumbrances subsequent to the mortgage, as the commissioners did ? That would be unjust. When the commissioners sell, they give a deed, the form of which is prescribed by the act; but when the money is paid by the mortgagor, or by any one for him, then they merely release the premises from the lien of the mortgage. And it seems to me the legislature never contemplated a conveyance in form, upon payment being made; but only a discharge of the incumbrance. Upon a contrary supposition, the commissioners may discharge the land from the incumbrance; and yet retain the fee in themselves as trustees for the state when the object of the *54 trust is accomplished, and when the cestuis que 'trust have received their money in full satisfaction and discharge ® the premises which they still held vested in their trustees.
The important question is, whether the lessor of the plaintiff acquired any right by the sale of the equity of redemption.
That an equity of redemption is, for most purposes, considered the legal estate, and may be sold, either by deed or by judicial sale, which is an assignment in law, there is no doubt. But, as on the 14th of August, 1824, when the right of Wattles was sold, the fee was by operation of the mortgage, and the provisions of the statute, actually vested in the loan officers, what did the purchaser take under that sale ? The estate was, for the time at least, discharged of all liens subsequent to the mortgage; and had the commissioners proceeded to make sale under the statute, the purchaser would have held the land discharged of the lessor’s judgment; for the commissioner held by a title older than the judgment. Strictly speaking, therefore, the judgment was not a lien upon the property sold, at the time of the sale. But when the commissioners released the premises from the operation of their mortgage, is not every thing put back in statu quo ? Does it not take effect by relation to the time when the default happened ? Must not all the rights of the parties be considered as if no default had happened, and the fee had never been vested in the commissioners ? This doctrine reinstates all parties interested *in the relation they held before the default; and produces equity in its results; but a contrary doctrine puts it in the power of the assignee of the mortgagor, by his own default, to defeat the operations of all liens subsequent to the mortgage; which very liens may have been part of the consideration of his purchase from the mortgagor. It cannot be doubted, that had the defendant or the lessor paid up the interest and costs before the sale, the estate which bad been divested by the non-payment, would have re-vested by the payment. Even had a stranger paid the money, and it had been accepted, the effect would have been the same. (Com. Dig. Condition, (Gr. 1).
*55 • Suppose in the ordinary case of a mortgage the money is not paid, and a forfeiture is the consequence. The title, that is, the legal estate, is then in the mortgagee, and on ejectment, he may recover the possession. Suppose, after forfeiture, another creditor obtains judgment. If the mortgagee proceeds, the judgment is unavailable; but it attaches and becomes a hen upon the equity of redemption, and if payment of the mortgage money is made, the judgment creditor can. then enforce his judgment. Suppose a sale, even after forfeiture upon a judgment which had previously become a lien. I apprehend, that though such sale is of no avail if the mortgage is foreclosed, yet if the money is paid and the legal estate re-vested, it is so re-vested by relation, as of the time' of forfeiture; and all intermediate liens retain their priority.
It seems to me not correct, in this case, to say that there is no equity of redemption ; because, wherever the estate may be during the default in paying the interest, the property remains with the debtor, until after a sale; and on his performing certain acts the property is to return to him. What I contend for, is, that when the property does return, it takes effect by relation to the time when it was divested ; and all intermediate acts of others,' done on the presumption that the debtor was the owner, are confirmed. By the release and discharge, the party is remitted to his former estate; and all the acts done by him and others affecting *the estate, are rendered effectual. 3 Cow-en, 80, and the cases there cited.
From these positions it follows, -that, the lessor of the plaintiff and the defendant both claiming under Wattles, the mortgage to the loan officers and proceedings under it, not affecting the question between these parties, and the lessor having the oldest title, the plaintiff must have judgment.
. Judgment for the plaintiff.